The opinion of the court was delivered by
Duncan, J.
The equitable action of ejectment, in this state, forms a considerable branch of the law. From the nature of our original titles, settlement rights, warrants, and applications, all imperfect rights, so variant in their circumstances from other countries, our courts of justice have been obliged to form a system of laws adapted to this species,of title, and accommodated to all its circumstances, and whieh perhaps could not, 'after all our experience, be changed to advantage; and which, indeed, ought not to be changed, however specious the reason might be, as it would tend to destroy all security of title, and introduce new confusion, which nothing but a steady adherence to decisions can prevent. And when to-this is added, that in general the people contract by articles for payment by instalments, and the legal title seldom made until all the purchase money is paid, and the frequent assignment of these articles, we ought not to be surprised at the numerous complicated cases which arise in our courts of law and equity; for they are courts of law and equity distributing justice by the same medium— the instrumentality of a jury. In Pennsylvania, equity is law. Courts give the equitable principle to the jury, as they lay down the legal principles. The facts are for the decision of the jury, as *279 all contested facts must be; but whether, on any state of facts found by the jury, the party is entitled to equity, and the mode, manner, and extent of relief, is for the court. If these principles were well understood and firmly acted upon* the tjtoe consumed in the trial of these vexatious causes would be, greatly shortened, and justice would be advanced. ■ ,.]y •'*N
The rules of equity are as binding as tfkSrules of law. Applying these rules to the case under consid'eratioájíiias there been any error committed on the trial of this cause, substantial error, which has injured the plaintiff? I think there has hot, and that the plaintiff has not shown a case entitling him to call on the defendant to surrender up his possession and improvements,' the labour of years, and the title for which he has paid his money, and that whatever remedy he may have is against Decamp.
In executory contracts, such as this, time is generally an important circumstance. A vendor is not obliged to keep his property unimproved and unproductive, until it pleases the vendee to proceed. There should be no culpable dilatoriness, no backwardness, no shifting off, on his part; there should be no waiting for the rise of the lands; no catching at improvements made by subsequent innocent purchasers, who, though they may have had some notice of the contract, yet, at the same time may be informed, and have good reason to conclude, that it has beén abandoned; given up, from inability to pay; from unwillingness to accept the title; in a country like this, where new land is plenty, and where all are in state of motion and emigration, one, after the lapse of years, would consider that the purchaser had suited himself with another place. If we had a regular Court of Chancery, proceedings by bill and answer, and, if a case like the present were brought before a Chancellor, he would without difficulty dismiss the bill, and leave the party to his remedy at law, to recover back the money from the vendor.
From the evidence, it would appear that from the time of the first payment, until after Bronson and Shilling’s purchase, payment of the money, deed, and valuable improvements, no movement was made by the plaintiff to complete the contract. He was desirous of getting rid of it; he was poor and embarrassed, and not able to pay for it, and did not like the title; and, it would seem his own opinion was that,the title, though defective, yet the owner might be improved out of it; and, when the improvements are in a state of forwardness, by Bronson, he steps forward, and says he will take the title, because Bronson has improved it, because the value of his improvements have sunk the land and improved the title.
I do not think it necessary to travel over the whole case in detail, or to answer the minute objections made to the charge of the court; because I am satisfied, that, on the hinge on which the cause turned, the charge of the court was correct and accurate; and embraced in *280 one strong and impregnable position, the whole merits of the case. “ The question for the court and jury,” says the presiding judge, (and he could not have expressed it better,) is, “ Does the plaintiff come into court with such a clear and pure equity, that he is entitled to recover on his articles, against the legal title, possession, and improvements? We say he cannot recover the land, but should be turned to his action against Decamp, to recover back the money, with such damages as he may be entitled to, unless the jury believe there was a combination between Decamp and Bronson to cheat and defraud Hawthorn by the purchase; and this question of fraud is the chief fact for the jury to decide.” I cannot discover the scintilla of equity in favour of the plaintiff’s claim; it could not be, indeed, in a court of equity, that he, lying by as he did for years, not only lying by, but declaring his inability to complete the contract, the defect in the title, (the only cure for which, as he said, would be to improve the owner out of his land,) acknowledged by him, that he should, after the purchase by Bronson, payment of the purchase money, conveyance, and valuable improvements, pounce down upon him, and sweep all this away, even the very purchase money; for the tender to Decamp was nothing, the demand of the conveyance from him nothing, because Bronson was the notorious owner of the legal title with his deed on record; but, if he had tendered the money to him, and demanded the conveyance, I do not think that any court of equity would have compelled him to convey.
This disposes of the whole case on the merits. There is, however, the bill of exceptions to the reception of Trout as a witness, which remains to be disposed of. Trout was a competent witness for the defendant. What interest had he in the event of the trial? If he had any, it would be in favour of the plaintiff; for if the plaintiff recovered, then he would be discharged of his liability to Hawthorn. Decamp’s obligation would be complied with, and Hawthorn would have the title and the possession. But, if he did not recover in the ejectment, Decamp would continue responsible; so that it was clearly Trout’s interest to sustain the plaintiff’s action, and not to destroy it; because, by destroying it, it left him open to an action on the security for Decamp.
Judgment affirmed.